### HANNAH GIVEN *versus* HENRY MARR.

Where the holder of the equity of redemption, paid the amount secured by a mortgage of the land, and no intention of keeping the mortgage in force was disclosed at the time, and there was then no contract for the assignment thereof; and where, many years afterwards, the mortgagee made an assignment of the mortgage and of the notes secured by it, to the holder of the equity, so paying the notes; *it was holden,* that the mortgage was to be considered as discharged.

No statute is to be held retrospective, or in violation of any constitutional provisions, where it affects rights, unless such shall be the necessary construction.

If a law of the State, allowing divorces to be decreed for new causes, were clearly retrospective, affecting conveyances already made, such law would, as to such conveyances, be unconstitutional and void. The act of 1829, c. 440, permitting divorces to be decreed, for desertion, for the term of five years, without reasonable cause, is not retrospective.

The wife is not entitled to dower, during the life of her husband in lands of which he had been seized during the coverture, and had conveyed prior to the stat. of 1829, c. 440, although in 1842, she had obtained a divorce from her husband, on account of his wilful desertion of her, for the term of five years, without reasonable cause.

THE parties agreed upon a statement of facts.

" This is an action of dower, and it is agreed, that the demandant was lawfully married to John Given, before 1819, and that the demand of dower was duly made on the 25th of January, 1845, as stated in plaintiff's writ, and that the facts, contained in the case of said Marr, against said Given, reported in the 23d vol. of Maine Reports, page 55, may be considered and used as evidence in this action by either party, so far as the same is legally admissible. And it is further agreed, that a divorce from the bonds of matrimony was granted and decreed by the said Court, at the May Term of the same, holden in said county, in 1842, in favor of said Hannah, and at her instance, from her husband, John Given, on account of his wilful desertion of her, for more than five years previous to her application for said divorce. The tenant held the premises by deed from Rufus Marr.

" If, in the opinion of the Court, upon said facts she is entitled to recover her dower in the premises described in her

writ, then commissioners are to be appointed to set off her dower and to assess her damages from such time as the Court shall decide, and she is to recover her costs. Otherwise she is to become nonsuit and the defendant is to recover his costs.

" If either party wishes to put in any further testimony it may be done by depositions taken according to law.

" Samuel Wells, attorney to plaintiff,
" Seth May, attorney to defendant.

Extract from the deed of Robert Brinley to Rufus Marr, dated August 28, 1841.

" Do hereby assign, transfer and make over to said Marr, all my right and interest, in and to a certain mortgage deed and to the notes therein described; and I do also hereby release all my right, title and interest in and to the premises described in said mortgage."

*May,* for the tenant, was called on to take the affirmative, and show a defence, and contended: —

In this case the tenant relies upon two grounds in his defence: —

1. The demandant is not dowable because her husband had only an instantaneous seizin. The deed to him and the mortgage back, were executed at the same time and were parts of the same transaction. That such a seizin gives no right of dower is well settled. *Holbrook* v. *Finney,* 4 Mass. R. 566.

But the question in this branch of the defence is, do the facts show that the seizin of John Given was only for an instant? This depends upon the fact whether the mortgage is still subsisting and uncanceled. If it be so, then the demandant is not dowable. We contend, that according to the well settled principles of law, that mortgage is to be regarded by the Court as unpaid and subsisting. It appears by the facts in this case, that Rufus Marr acquired a right in the equity of redemption on the 22d of May, 1823. In the same month he paid the amount of the mortgage to the attorney of Brinley, who made an entry of that fact upon the back of the execution which Brinley had obtained on his judgment for possession. At that time the mortgage was neither discharged nor assigned,

but Brinley, holding the legal estate, as we say, in trust for Rufus Marr, who had paid to him the amount of the mortgage, by his deed dated Aug. 8, 1841, sold and assigned the mortgage and the notes to said Rufus Marr, and quitclaimed to him all his interest in said estate. It is perfectly apparent that Marr did not intend to extinguish the mortgage, else why was it not discharged, and why were not the notes taken up and destroyed? At any rate it was not discharged, and is therefore a *subsisting legal estate*, and both the mortgage and the equity of redemption vested in the tenant by virtue of the deed of warranty from Rufus Marr to him.

In a recent case, *Pool* v. *Hathaway*, 22 Maine R. 85, the Court decided, that " where there is a conveyance by mortgage to one who had *previously* acquired a right in the equity of redemption, the rule is well established, that . the mortgage will not be considered as extinguished when it is for the interest of the grantee to have it upheld, unless the intention of the parties to extinguish it is apparent."

Under such circumstances if it be for the interest of a party to uphold a mortgage, his interest to do so will be presumed and no merger will take place. *Hatch* v. *Kimball*, 2 Shepl. 9; *Freeman* v. *Paul*, 3 Greenl. 260; *Gibson* v. *Crehore*, 3 Pick. 475; *Thompson* v. *Chandler*, 7 Greenl. 377; *Campbell* v. *Knights*, 24 Maine R. 332.

2. The demandant is not dowable, because, at the time of the conveyance of the premises by her husband, no such cause of dower, as a divorce for five years wilful desertion, was known in the law. No statute recognized such desertion as a cause for divorce, until the stat. of 1829, c. 440, sect. 1.

It is true, that by the stat. c. 71, sect. 5, passed in 1821, as well as by the statute of Mass. of 1786, before the separation, it was enacted, that where a divorce was obtained for the *adultery* of the husband, " the wife should have her dower assigned her in the lands of the husband, in the same manner as if such husband was naturally dead." Up to 1829, a divorce obtained for any other cause, except the adultery of the husband, gave the wife no right of dower.

By the stat. of 1829, c. 440, sect. 1, and by subsequent statutes, and by the Rev. Stat. c. 89, sect. 2, the causes of divorce are greatly multiplied, and by these statutes, the right to dower, is made an incident to the divorce, for any of these causes except that of impotency. The 16th sect. of the Rev. Stat. expressly gives her the right of dower for any of the other causes mentioned in the 2d sect. " to be assigned to her in the same manner, as though her husband was dead," and by the Rev. Stat. c. 144, sect. 10, it is provided that " any woman who is divorced from her husband *for his fault*, may recover her dower in the manner before in the act provided, against her former husband or whoever shall be the tenant of the freehold."

These statutes show, that at the time of the conveyance from John Given to Rufus Marr, viz. on the 22d of May, 1823, wilful desertion of the wife for five years was not *a fault* of the husband, and such act at that time could not create in favor of the wife any incidental charge upon the land. What then were the rights of the demandant at that time ? It is true she had an inchoate right of dower, and though contingent, such right has been held to be an actual incumbrance on the land. *Porter* v. *Noyes*, 2 Greenl. 22 ; *Shearer* v. *Ranger*, 22 Pick. 447 ; *Jones* v. *Gardner*, 10 Johns. 266.

She, then, had a right to dower, upon proof of her marriage, of seizin in her husband, during the coverture — and of his death. At common law, his *natural death* was a condition precedent to the right of dower. Coke Litt. 33, *b*, where it is said, " if they were divorced *a vinculo matrimonii* in the life of her husband, she loseth her dower." — See also Stearns on Real Actions, 285. She had also by statute, as it then was, a right to dower in case of a divorce for the cause of adultery committed by her husband, in the same manner as if he were dead. Such was the nature and the extent of her inchoate or contingent right, at the time of the conveyance by her husband. All this was seen by his grantee and understood — and to extend that right by the creation of new and unforeseen causes, not contemplated by the parties, at the time, is as manifestly

unjust, as it would be to give two thirds of the land as dower, instead of one. This incumbrance of dower — nor the causes upon the happening of which, the demandant may have it, can neither be enlarged or diminished without the consent of all parties who are concerned or to be affected by it.

The case of *Barber* v. *Root*, 10 Mass. R. 260, is not a question of dower after a divorce ; but a question whether the divorced wife was entitled to be reinstated after the divorce, in her lands, held in her own right ; and it was held, that at common law, a dissolution of the marriage, as well as the death of the husband, had that effect.

This brings us to the question, whether the Legislature has extended this incumbrance, by multiplying or creating new contingencies, upon the happening of which, the right of *this* demandant to dower in these premises is to attach? And in the second place, if the Legislature has done so, is such legislation binding upon the tenant ? And —

1. — We say the Legislature has not done so, because the statutes · of 1829, c. 440, sect. 2, and 1830, c. 456, sect. 1, and the Rev. Stat. c. 89, sect. 2 and 16, are to be considered as prospective in their operations, so far as regards the rights of the wife to dower in lands conveyed before the passage of those acts. Justice and the principles of common honesty require such a construction. *Brunswick* v. *Litchfield*, 2 Greenl. 28 ; *Hastings* v. *Lane & al.* 15 Maine R. 134 ; *Quackenbush* v. *Danks*, 1 Denio's R. 128.

But secondly — We say if the Legislature has done so, such legislation is not binding upon the tenant in this suit. To this point I cite the well considered opinion of this Court in the case of *Kennebec purchase* v. *Laboree & al.* 2 Greenl. 290, 291, 292, 294 and 295.

*Wells* argued for the demandant, contending that —

1. The husband of the demandant was seized of the premises during the coverture.

The mortgage to Brinley was extinguished, when the money secured by it was paid. No action could have been sustained afterwards by the mortgagee, and he could give no such right

to another person. One mode of discharging a mortgage provided by the statute is by quitclaim deed; and the deed in this case was no assignment of the mortgage, but a mere discharge. *Vose* v. *Handy*, 2 Greenl. 322.

2. By the divorce from her husband, the demandant became entitled to her dower in the premises, in the same manner, as if he had then been naturally dead. So far as it respects dower, the divorce operated as a civil death. The stat. 1829, c. 440, re-enacted in Rev. Stat. c. 144, § 10, provides, that " any woman, who is divorced from her husband, for his fault, may recover her dower, in the manner before provided, against her former husband, *or whoever shall be tenant of the freehold.*" The Legislature has the right to declare by law what a civil death is. The same thing had been done before, in declaring that the wife was entitled to dower, when a divorce had been decreed for adultery of the husband. The law does not give the right of dower, but merely removes the life estate in the husband, and permits the before existing right of dower to become perfected. It has long been the law, that other causes than the death of the husband may entitle the wife, to enforce her right of dower. Co. Lit. 133 (a); Cruise's Dig. Dower, § 27; 1 Black. Com. 132; *Davol* v. *Howland,* 14 Mass. R. 219; *West* v. *West,* 2 Mass. R. 223; Stearns on Real Actions, 285. In this case, the divorce was obtained by the wife, through the fault of the husband; and the language of the statute is express, that in such case, she shall be entitled to dower not only against the husband, but against whoever shall be tenant of the freehold.

Nor is there any ground for saying that the act is unconstitutional. This is merely a new remedy for a then existing right, which the Legislature has the power to give. *Thayer* v. *Seavey,* 2 Fairf. 284. The case of *Sewall* v. *Lee,* 9 Mass. R. 363, says that the Legislature has the power to annul the right of dower; and if so, why not have the right to hasten the time of enjoying it. It has been held, that the Legislature may legalize a marriage, before unlawful; and why not dissolve one? *Lewiston* v. *North Yarmouth,* 5 Greenl. 67. The

Legislature may say, what shall be sufficient evidence to support actions; and the present case is nothing more. They may pass acts regulating the general rights of the community, although they may incidentally affect, in some degree, private rights. *Foster* v. *Essex Bank*, 16 Mass. R. 245; *Potter J.* v. *Sturdivant*, 4 Greenl. 154; *Read* v. *Frankfort Bank*, 23 Maine R. 318; 7 Greenl. 481; *Oriental Bank* v. *Freese*, 18 Maine R. 109; *Savings Institution* v. *Makin*, 23 Maine R. 360; *Fales* v. *Wadsworth, ib.* 553. It is not perceived why this act is more unconstitutional, than one would be, which should make an offence capital, which was not so at the time of the conveyance, and in that manner hastening the time, when the widow would be entitled to assert her claim to dower.

The opinion of the Court was prepared by

TENNEY J. — The parties agree, that the demandant was legally married to John Given prior to the year 1819; that in May, 1842, she was divorced from the bonds of matrimony, for the cause of desertion of the husband, on her application; and that before the commencement of this action, a demand to have dower assigned in the premises was seasonably made. The farm in which dower is claimed, was "taken up and settled by one Hobbs, thirty-five years ago, and he sold his right to John Given for the sum of $300, who never paid it till he left the State in 1821; and his wife has lived there since that time till about the year 1840 or 1841. On January 2, 1819, he took a deed with covenants of warranty from Robert Brinley, of the premises, and at the same time gave to his grantor a mortgage of the land to secure the payment of the purchase money, which was $180. On May 22, 1823, he conveyed by quitclaim deed, to Rufus Marr, all the interest, which he had in the same; and afterwards the grantee paid the full amount due on the mortgage to Brinley, the farm being then worth about $800. On March 21, 1841, Rufus Marr conveyed to the tenant, with covenants of warranty. On August 8, 1841, the tenant having commenced a suit against the present de-

mandant to recover possession of the land, his attorney, without the payment of any consideration, obtained from Brinley, a release and an assignment to Rufus Marr, of all the interest, which Brinley had in the premises, which instrument was left with the attorney.

The questions presented for consideration are, — 1. Was the husband of the demandant seized during the coverture? If so, — 2. Is she entitled to dower by reason of the divorce? The counsel for the demandant insist, that both these questions must be answered in the affirmative.

" *As between the mortgagor and mortgagee,* the fee of the estate passes to the mortgagee, at the time of the execution of the deed; and the mortgagee may enter immediately, or maintain a writ of entry against the mortgagor." " But *as between the mortgagor and other persons,* he is considered as still having the *legal estate* in him, and the power of conveying the legal estate to a *third* person, subject to the incumbrance of the mortgage." *Blaney* v. *Bearce,* 2 Greenl. 132.

At the time John Given conveyed to Rufus Marr, the former was the owner of the fee in the land, subject only to the mortgage to Brinley; the grantee took all this right, on the delivery of the deed, and subsequently *discharged* the mortgage by payment of the entire sum, secured thereby. The facts of the case disclose no intention, to keep on foot the mortgage, but to acquire an absolute title in the land. There is no evidence of any contract, for an assignment of the mortgage. The release and assignment, executed almost twenty years afterwards, could in nowise change the relations of the parties. Brinley had then no interest whatever in the land, and the deed was inoperative for any purpose. It might have been otherwise, if the contract between Brinley and Marr, had been, that for the money paid, an assignment was to have been made. As between the husband of the demandant, and the tenant's grantor, the fee being in the former, it passed with the seizin, to his grantee; the tenant is estopped to deny it. *Kimball* v. *Kimball,* 2 Greenl. 226; *Hains* v. *Gardner & al.* 1 Fairf. 383.

2. The demandant claims to be entitled to judgment by the authority of the statute of 1829, chap. 440, and the same provisions re-enacted in the Rev. Stat. chap. 144, $\S$ 10, and the decree of divorce, against the husband for his desertion. It is denied by the tenant, that the Legislature has the power by passing an act, authorizing a divorce for a new cause, to give to the wife, who may be divorced by reason thereof for the fault of the husband, the right of dower in real estate conveyed before such act, by the husband. It is insisted that such legislation, would be in violation of the constitution of the State, being retrospective, and taking away vested rights. And it is also denied, that the Legislature has attempted to exercise such a power.

Such a statute could not be regarded as affecting a remedy in any manner. So far as it would have any operation upon a tenant of land, conveyed by the husband before the act, its effect would be upon the rights thereto, and nothing further. The mode by which the dower would be obtained, if its claimant was entitled thereto, would remain unchanged by such a statute. Would it take away or abridge any rights of the tenant, as without the law, they were secured to him by the constitution? And if the constitution would be violated, in which of its provisions is the injury done?

By article 1, sect. 1, of the constitution of Maine, " all men are born equally free and independent, and have certain natural, inherent, and inalienable rights, among which are those of enjoying and defending life and liberty, *acquiring, possessing and protecting* property." Of this section there has been a judicial construction in this State, where the Court say, " by the spirit and true intent, and meaning of this section, every citizen has the right of possessing and protecting property, according to the *standing laws* of the State, in force, *at the time of acquiring it, and during the time,* of his continuing to possess it." And again, " It cannot by a *mere act of the Legislature,* be taken from *one man* and vested in *another directly,* nor can it by the *retrospective operation* of laws, be indirectly transferred from one to another, or be subjected to the govern-

ment of principles in a court of justice, which must necessarily produce the same effect." *Proprietors Kennebec Purchase* v. *Laboree & als.* 2 Greenl. 275.

If a man should intermarry and obtain a title in fee to land, without any incumbrance, prior to the act of 1829, before referred to, and should convey the same with covenants of warranty, his wife being living, and not relinquishing her right of dower, according to decisions in this State, Massachusetts and New York, there would be a breach immediately, and an action could be maintained, and nominal damages recovered for such breach. *Porter* v. *Noyes,* 2 Greenl. 22 ; *Shearer* v. *Ranger,* 22 Pick. 447 ; *Jones* v. *Gardner,* 10 Johns. 266. If, from this covenant of warranty, the inchoate right of the wife to dower should be excepted, it would be otherwise ; the covenant would be fully kept. Would there be a breach of that covenant, having the same exception after the act of 1829, supposing it to be prospective, in its terms ? If it secured to the wife the right of dower, provided she should be divorced from her husband for his desertion, it would seem to be no breach, for if this right would be enlarged, according to the new causes, the exception would be enlarged to the same extent, by the same statute. But where the parties contracted as they did in the covenant and the exception to it, the grantee was entirely secure against every incumbrance, excepting the inchoate right of the wife, founded upon the causes of divorce and dower, under the law as it then was. In the contract, the parties are supposed to have made it, in reference to the law, then existing. If the new statute upon a fair construction of its terms, gave the right of dower in the land supposed, and at the same time created no breach of the covenant, it is manifest, that it increased the incumbrance, beyond the fair intent and meaning of the contract, and thereby impaired its obligation. This no law of a State can do. Const. U. S. art. 1, sect. 10, No. 1. The exception then being confined to the inchoate right of the wife, as it was, when the deed was given, the same cause which limits the exception, has the like effect upon the right of the wife to dower. If it were not so, the

right which vested in the grantee, when the deed was delivered, would be taken away by the supposed act of the Legislature, and no remedy provided upon the covenant, in his deed.

If the law of 1829, allowing divorces to be decreed, for desertion of either of the parties, for the space of five years, had been clearly retrospective as well as prospective, could it be a valid law, so as to give a party the right of divorce, when the desertion complained of, was wholly before the passage of the law? It needs no argument to show, that so far as it was retrospective, it could not. And if it should furnish no ground of divorce, by reason of its being retrospective as to the cause of divorce, could it have effect to give dower in land conveyed by the husband, before its enactment, and so as to the conveyance retroactive, upon a divorce for desertion, continued for five years after the law which would be prospective as to the cause of divorce?

The principle is not altered, by the provision that the right of dower shall be incidental to the decree of divorce, instead of its being the direct object of the statute, as we have already seen from the quotation from the case referred to, 2 Greenl. 275. If by statute, the basis of the right of dower, in land conveyed by the husband, during coverture, can be enlarged afterwards, it is not perceived, what barrier is interposed to a further extension; if dower can be had, as the consequence of a divorce for a new cause, a direct act, that she shall have dower in land, of which the husband was seized *before* as well as *during* the coverture, would violate no constitutional provision. And if causes, which can result in the assignment of dower can be increased, we see no reason why the quantity and duration of the estate therein, may not be enlarged also; or why the right of an interest in the premises, should be confined to the wife or the widow.

It is said, that the statute in question, is no more liable to this objection, than would one be, which should make certain crimes capital, that are not so, at present. In questions of dower, the Courts do not stop to inquire by what agency, the husband came by his death, not even, if it should be suggested,

that it was by the fault of the wife. If the husband were seized during the coverture, and is dead, the foundation of the right is established, although his death may be hastened by legislation or otherwise.

When the tenant's grantor took the deed from the demandant's husband in May, 1823, what were the rights conferred thereby under the laws then in force ? An estate in fee incumbered by the outstanding mortgage, and the inchoate right of the wife to dower. The latter right could then be consummated only by the death of the husband, or by a divorce upon her application for his adultery. Upon the facts of the case, these were all the incumbrances which could exist by possibility. If the present law had been enacted before the husband's conveyance, in addition to the risks just mentioned, he would be exposed to the liability of assigning dower upon a divorce for additional causes. It follows therefore, that such a statute as the demandant's counsel insists, that the one he invokes, is, could have an effect upon the land in question, the tenant would not have the right of " possessing and protecting property," according to the standing laws of the State, in force at the time of his " acquiring" it, and during the term " of his continuing to possess it."

The power of the Legislature to make such a law as has been supposed has been examined, independent of the question whether the statute of 1829, and of the Rev. Stat. c. 144, sect. 10, was of such a character. This was done, because it was seriously argued by the counsel for the demandant, that the power was in the Legislature, and that such was the construction to be put upon the section ; indeed, without both, the action could have no basis. The decision of that point would also furnish a rule for the interpretation of the language of the law, in one event, upon the inquiry, whether the law is in its terms, retrospective. *No statute is to be held retrospective, or in violation of any constitutional provision, when it affects rights, unless such shall be the necessary construction.* The language of the section is, " any woman, who is divorced from her husband, for his fault, may recover her

dower in the manner before provided, against her former husband, or whoever shall be the tenant of the freehold."

The section in its terms is general, not specifying what cases, or classes of cases shall come within, or be excluded from its operation. It is in itself sufficiently broad to embrace all cases, where a wife has obtained a divorce for the fault of the husband, if there is nothing in the laws of the State of equal or superior authority, manifesting a different intention in its authors.

That it was framed with reference to other provisions of law, in order to learn its meaning, most clearly appears; and by those other legal provisions, the meaning may be restricted. It could not have been intended, that the right of dower, in land conveyed by the husband, should attach to the wife, after her divorce, when she had barred that right, by signing the deed of conveyance, relinquishing it; this would amount to a repeal of other provisions enacted at the same time. She could not have dower in land, conveyed by the husband, before the coverture, as that would change one of the established principles touching the right of dower. Neither was it the object to give the right, to claim dower against the former husband, or the tenant of the freehold, at the election of the claimant; but clearly against the one of the two, who should be the tenant of the freehold at the time, when the right should be attempted to be enforced; for by other principles, the right could be made effectual, only against the one claiming the title in the land. Therefore in giving a construction to the section, so general in its language, we must look at it, in connection with other statutes, and the doctrines of the common law, applicable to the subject, — and also in connection with the constitution as the supreme law of the State. We are not to suppose, that the Legislature was at all unmindful of the restraints that this imposed, or was uninfluenced by them, unless the contrary is clearly manifest. There being nothing in the section itself, showing that they intended that it should apply to land, conveyed before the passage of the law, increasing the causes of divorce, excepting the general

terms, it cannot be understood, to have been intended for a purpose which would be unauthorized by the constitution.

By the agreement of the parties the demandant must become                                                    *Nonsuit.*