# Williams, Adm'rx, *et al. v.* Hale.

*Bill in Equity for Dower.*

1. *Dower; when not barred by divorce.*—Under the statutory provisions of this State, a divorce from the bonds of matrimony, obtained by the husband on the ground of voluntary abandonment, does not bar the surviving widow of her right of dower.

APPEAL from Jefferson Chancery Court.
Heard before Hon. THOMAS COBBS.

[Williams, Adm'rx, et al. v. Hale.]

The bill in this case was filed on 12th February, 1881. Its purpose and material allegations are sufficiently stated in the opinion.   The defendant demurred to the bill on the following, among other, grounds: "Because the bill upon its face shows that a decree of divorce *a vinculo* was obtained by Gardner Hale, the husband of the complainant, before his death, in the Chancery Court of Jefferson county, Alabama, having jurisdiction of said cause, and that said decree was so granted to said Gardner Hale for and on account of the misconduct of the complainant, and against the complainant, and that said decree of divorce is still in force."   The Chancery Court entered a decree overruling the demurrer, which is here assigned as error.

R. H. PEARSON, for appellant.   (No brief came to the hands of the reporter.)

J. W. BUSH and J. T. TERRY, *contra.*—(1) It is conceded that a *statutory* divorce on the ground of adultery, *a vinculo matrimonii*, does bar the widow of her dower; for the statute expressly so provides.—Code of 1876, § 2698. A *common law* divorce for adultery is never *a vinculo matrimonii*, but always *a mensa et thora.— Wait v. Wait*, 4 N. Y. (Coms.), 100.   Until our statute, Code, § 2696, there was no such thing as a divorce which recognized the validity of the marriage, and avoided it for causes happening afterwards.— *Wait v. Wait, supra ;* and since our statute, but one cause, viz: *adultery*, committed after the marriage, has the effect to annul the marriage, so as to bar the right of dower; and this bar is alone in consequence of the statute.    (2) In Lord Coke's time, there was no such thing as dissolving a *valid marriage.*—Bish. on Married Women, § 706.   His maxim was, " *Ubi nullum matrimonium, ibi nulla dos.*"   A divorce *at common law* for a legal cause existing at the time of the maraiage, such as bigamy or an incestuous marriage, annulled the marriage *ab initio*, and was styled a divorce *a vinculo matrimonii*, leaving not a vestige of the marriage contract.—*Ib.*   (3) A *statutory* divorce has no retroactive effect on the validity of the marriage, or on the rights and capacity of the widow, or on the rights of the children of the marriage, other than the statute expressly provides.   *Expressio unius exclusio alterius.*—Bish. on Mar. & Div. (6th Ed.), §§ 706–7; Code, §§ 2685–2703.    (4) The policy of the law has always been to preserve with great care the right of dower, when it has once attached to the property of the husband.—Tyler on Inf. & Cov. p. 575; *Forrest v. Forrest*, 6 Duer (N. Y.), pp. 102–153; *Wait v. Wait, supra.*   (5) If the legislature had intended to exclude the wife from dower when divorced from the husband on the ground of her abandonment of him, it

[Williams, Adm'rx, et al. v. Hale.]

would have so provided in express terms, as it did when she has been guilty of adultery; and failing to express her exclusion from dower in such case, it must be presumed that the legislature did not intend to exclude her.   (6) But this is no longer an open question in this State.   This court has decided that a divorce for abandonment does not bar the right of dower.   44 Ala. 450.   See also on same point, 29 Ill. 442; 55 Penn. St. 375.

STONE, J.—The present is a bill filed by Mrs. N. L. Hale, the appellee, to recover dower in the lands of Gardner Hale, deceased.   The bill sets forth that complainant, then Mrs. Thompson, intermarried with Gardner Hale in 1874, and that said Gardner Hale died in 1880.   That during the coverture he, Hale, owned certain lands described in the bill, in which complainant claims dower, she never having relinquished her dower interest therein.   Hale disposed of some of the lands after the marriage, by contract in which the complainant did not join.   The heirs and personal representative of Hale, and also the purchasers of the portions of the lands sold, are made parties defendant.   In 1875 the parties separated, Mrs Hale abandoning her husband and her home.   They never afterwards lived together.   Mr. Hale filed a bill, and obtained a divorce from the said N. L., his wife, on the sole ground of abandonment.   The divorce, as our statute authorizes, was from the bonds of matrimony.—Code of 1876, § 2685.   The bill, in its averments, sets forth all the foregoing facts, and in excuse for the separation says, that they lived together as husband and wife, "until their separation in 1875, without any fault on the part of oratrix, except her abandonment of him caused by his cruelty to her."   The bill is silent as to any defense interposed by Mrs. Hale to the divorce suit, and fails to show any of the rulings in said cause, other than the sentence of divorce.   Hence we are not informed whether any and what allowance was made to the wife pending the divorce suit, under § 2694 of the Code, and what, if any, permanent allowance was made to the wife out of the estate of the husband, when the divorce was granted. There was a demurrer to the bill, which the chancellor overruled.

A majority of the adjudged cases, and the strength of the argument, lead to the conclusion that the result of a divorce from the bonds of matrimony is, to bar the wife of all claim of dower in the husband's estate.   The maxim of Lord Coke is generally adopted, and held to govern in all cases of absolute divorce from matrimonial bonds.   "It is necessary," says that able jurist, "that the marriage do continue; for if that be dissolved, the dower ceaseth; *ubi nullum matrimonium, ibi*

[Williams, Adm'rx, et al. v. Hale.]

*nulla dos.*" In England divorces *a vinculo* were decreed only
for canonical causes—those which existed before the marriage.
Those occurring after marriage—even adultery—only author-
ized divorces from bed and board. Hence, in England, divorces
*a vinculo matrimonii* had the effect of declaring there never
had been a legal marriage. It avoided them *ab initio*. On this
account it has been often urged, and sometimes ruled, that ab-
solute divorces, granted on our statutory grounds, do not fall
within the reason of the rule, and do not bar her dower. The
decided weight of American authorities, as we have said, holds
that Lord Coke's maxim applies, and bars dower, in all cases of
divorce from matrimonial bonds.—2 Scrib. on Dower, chap. 19,
p. 507; 2 Bish. on Mar. & Div. § 706 *et seq.;* 2 Wait's Act.
& Def. 606; *Clark v. Clark*, 6 W. & Sug. 85; *Colvin v. Reed*,
55 Penn. St. 375; *Cunningham v. Cunningham*, Cart. (Ind.)
Rep. Vol. 11, 233; *McCafferty v. McCafferty*, 8 Blackf. 218;
*Whitsell v. Mills*, 6 Port. (Ind.) 229; *Rice v. Lumley*, 10 Ohio
Stat. 596; *Lamkin v. Knapp*, 20 Ohio Stat. 454; *Levins v.
Sleator*, 2 G. Green's Iowa, 604; *Given v. Marr*, 27 Me. 212;
*Wait v. Wait*, 4 Comst. 95; *Boykin v. Rain*, 28 Ala. 332.
There is a *dictum* in *Turner v. Turner*, 44 Ala. 437, to the
contrary.

By statute approved December 21, 1820—Clay's Dig. 170,
§ 8—it was provided that "the court pronouncing the decree
of divorce shall also order and decree a division of the estate
of the parties, in such way as to them shall seem just and right,
having due regard to the rights of each party and their chil-
dren, if any." But neither party could be devested of title to
property. The use during life was the most that could be de-
creed under that statute. So the statute law of this State re-
mained, until the Code of 1852 went into effect, January 17,
1853. Until that time our statutes were silent as to the effect
of divorce on the wife's claim of dower. In cases of divorce *a
vinculo* occurring before that time, the weight of authority
would have led to the decision that the wife was barred of
dower.

The Code of 1852 introduced some new regulations, which
have undergone no change since that time. Among them are
the following, copied from the Code of 1876:

"§ 2695. If the wife has no separate estate, or if it be insuffi-
cient for her maintenance, the chancellor, upon granting the
divorce, must decree the wife an allowance out of the estate of
the husband, taking into consideration the value thereof, and
the condition of his family.

"§ 2696. If the divorce is in favor of the wife for the mis-
conduct of the husband, the allowance must be as liberal as the
estate of the husband will permit; regard being had to the con-

[Williams, Adm'rx, et al. v. Hale.]

dition of his family, and to all the circumstances of the case.

"§ 2697. If in favor of the husband for the misconduct of the wife, the allowance must be regulated by the ability of the husband and the nature of the misconduct of the wife.

"§ 2698. A divorce for the adultery of the wife, bars her of her dower, and of any distributive share in the personal estate of her husband."

Considering all these sections together, and bearing in mind that § 2694 is confined to the matter of provision for the wife pending the divorce suit, it would seem that §§ 2695–7 are intended to operate after the divorce is granted, and during the joint lives of husband and wife. This allowance is generally, and properly, made from year to year. The husband's financial condition may change, and a consequent change of the allowance may become necessary. When, however, the husband dies leaving the wife surviving, there is a necessity for the application of different principles. It can not be supposed that the estate of the husband will be kept together, and an annual allowance carved out of it for the support of the surviving wife. That would tend to delay distribution of the estate for we know not how long. Final, permanent provision must be made, or none can be made. The act of 1820 seems to have anticipated this, and rendered all inquiry as to dower unnecessary, by directing a division of the estate of the parties, when the decree of divorce is pronounced. That clause was dropped out of the statutes when the Code of 1852 was framed; and, at the same time, § 2698 was incorporated in the compilation, declaring what should cause a forfeiture of dower. Why insert this provision, if the divorce was *ipso facto* a bar of dower? And why declare that the adultery of the wife, if the ground of the divorce, should bar her of her dower, if any divorce *a vinculo*, granted to the husband for the misconduct of the wife, had the same effect? Why single out one statutory ground, which entitles the husband to a divorce from the bonds of matrimony, if any other statutory ground equally bars the offending wife? *Expressum facit cessare tacitum*. The rules of construction force us to hold that the divorce obtained by Mr. Hale, based, as the bill charges it was, on the ground of abandonment by her, does not bar the surviving widow of her right of dower. We reach this conclusion reluctantly, and think the discretion in the matter of division of the estates of the parties, allowed to the courts under the act of 1820, was much better adapted to meet the varying phases of such cases, than our present arbitrary rule is. The remedy is not with us.

Affirmed.