MOREAU *et al.*, Appellants, *vs.* DETCHEMENDY *et al.*, Respondents.

1. By the Spanish law, which formerly prevailed here, property owned by husband and wife in community might, during the existence of the community, be conveyed by the husband without the consent of his wife. The introduction of the common law, and of laws prescribing the mode in in which a married woman might convey her separate property, did not abrogate this right of the husband to dispose of the community property.
2. A mortgage more than twenty years old is not such an outstanding title as will defeat an action of ejectment, no evidence been given in relation to the possession of the mortgaged premises, nor any evidence of the present existence of the mortgage debt.
3. Where a sheriff's deed is not sealed, a court of equity cannot by its decree aid the imperfect execution. Courts of equity cannot carry into effect by their decrees the incomplete execution of statutory powers.

*Appeal from Ste. Genevieve Circuit Court.*

This was an action of ejectment and partition, brought by Joseph Moreau and others, heirs of Pascal Detchemendy and Theresé, his wife, to recover an interest in a tract of land containing 10,256 arpens, embraced in three adjoining concessions and confirmations. The cause was tried by the court without a jury, and the following facts were found:

On the 30th of November, 1797, Zenon Trudeau conceded to Pascal Detchemendy 1600 arpens of land, which was confirmed by the board of commissioners in 1810 and surveyed. The survey was numbered 2059.

On the 28th of April, 1802, Pascal Detchemendy purchased of Francis Moreau a concession for a league square of land, or 7056 arpens, which was also confirmed in 1810, and the number of the survey was 884.

On a date which is not disclosed by the record, Pascal Detchemendy became the owner of another tract of 1600 arpens, which was confirmed to him under Poilivre in 1810, and the survey of which was numbered 2060.

On the 11th February, 1798, Pascal Detchemendy and

Theresé St. Gemme entered into a marriage contract at Ste. Genevieve, which contained the following provision : "The said future husband and wife shall be common in all movable and immovable goods and acquisitions, according to the customs and usages of this place, upon which their community shall be regulated."

On the 20th of July, 1821, Pascal Detchemendy and his wife conveyed to Clement Detchemendy, their eldest son, 2000 arpens of the tracts above mentioned, and on the 21st of September following they conveyed to him another 2000 arpens. These deeds were signed by both husband and wife, but were acknowledged before a justice of the peace.

On the 27th of June, 1822, Pascal Detchemendy executed to Pierre Chouteau and other creditors a mortgage, by which he conveyed to them all his remaining interest in the tracts to secure certain specified debts.

On the 17th of July, 1823, Francis Valle, sheriff of Ste. Genevieve county, executed to Berthelemy St. Gemme a sheriff's deed for an interest of Pascal Detchemendy in the land, the extent of which was a matter of dispute. This deed was not sealed. Berthelemy St. Gemme afterwards conveyed all the interest acquired by this deed to Clement Detchemendy. All the interest acquired by Clement Detchemendy by the deeds of July 20th, and September 21st, 1821, as well as under the sheriff's deed, is vested in the defendants.

There was no evidence in relation to the possession under the mortgage, nor in relation either to the extinguishment or present existence of the mortgage debt.

Upon these facts, the Circuit Court declared the law to be that Pascal Detchemendy, as the head of the community, had power to convey the community property, and that the two deeds from him and his wife to Clement Detchemendy operated to convey 4000 arpens ; that the mortgage was a valid outstanding title ; and that the sheriff's deed, although not sealed, might be reformed in that particular, as the omission was a mere mistake of the officer. The court accordingly gave judg-

ment for the defendants, and made a decree reforming the sheriff's deed. The plaintiffs appealed.

*Frissell, Perryman* and *Detchemendy*, for appellants. 1. The two deeds from Pascal Detchemendy and wife to Clement Detchemendy only conveyed the husband's moiety of the 4000 arpens, not being properly acknowledged to operate on the wife's moiety. The act of June 22, 1821, prescribing the form in which a married woman might convey her real estate, took away the husband's power to dispose of the community property under the Spanish law. 2. The court below erred in presuming that the sheriff's deed had been sealed, and in undertaking to reform it. It was a void instrument. 4 Kent's Comm. 450. 7 Mo. Rep. 357. Ib. 534. 8 Mo. Rep. 184. 3. The mortgage was not a bar as an outstanding title. Pascal Detchemendy lived more than twenty years after it was executed, and the plaintiffs offered to show that the administration on his estate had been closed. The debts secured by the mortgage, if not actually paid, are presumed to be paid and barred by the lapse of time. A title to be a bar must be such an one as can be enforced. No possession was ever had by the mortgagees under the mortgage. 10 J. R. 381. 7 J. R. 277. 3 J. R. 386.

*J. W. Noell* and *Scott & Young*, for respondents. I. The deeds from Pascal Detchemendy and wife conveyed the entire 4000 arpens and not merely the husband's moiety. 1. The right of the husband to dispose of the community property, under the Spanish law, was a vested right, and could not be affected by the introduction of the common law or statutes in relation to a married woman's conveyances. 2. If this were otherwise, still the deed passed four thousand arpens, as the husband's moiety of the land was over five thousand arpens. "If divers persons join in a deed, and some are able to make such a deed, and some are not able, this shall be said to be his deed alone that is able." Shep. Touch. 81. II. The mortgage was a good bar. 1. It was a good subsisting outstanding title. *Meyer* v. *Campbell, McNiff & Barnes,* 12 Mo.

Rep. 603.   10 Mo. Rep. 229.   2. The defendants having become the owners of the equity of redemption by the sheriff's deed, were entitled to set it up in their defence.   3. The statute of limitations does not apply here.   The estate of the mortgagees is a legal estate in the realty ; the debts are merged in the security and the statute does not bar them.   If, however, the debts are to be presumed paid, then the defendants, who hold the equity of redemption, are to receive the benefit of that presumption, and not the plaintiffs.   III. The sheriff's deed was properly admitted and the proper effect was given to it. 1. The wife's community property was subject to sale under execution against the husband alone.   Schmidt's Civil Law, chap. 4, sec. 1, p. 12, second part.   Ib. chap. 3, art. 40.   1 White's Recop. 63.   2. Where a seal is omitted by mistake it will be supplied.   Mitford's Pl. 116, side page.   Ib. 128, note 1.   Again, courts of equity may correct defective executions of powers, and the authority of the sheriff to make a deed is a power conferred by statute.   2 Sug. on Powers, 136, side page and cases cited.   2 P. Wms, 490.   2 ib. 624. Again, the fact that the deed was upwards of thirty years old authorized the court to presume that it had been sealed.   1 Sug. on Powers, 300.   Taylor on Ev. sec. 104.   1 Greenleaf's Ev. sec. 144, note 1, last ed.   Mathews on Presumptions, secs. 35, 36, p. 39.

GAMBLE, Judge, delivered the opinion of the court.

There are three points in this case which deserve consideration.   1. Whether the deeds made by Pascal Detchemendy and wife to their son, Clement Detchemendy, conveyed the title to the whole of the land therein described or only an undivided moiety.   2. Whether the mortgage to Chouteau and others, made by Pascal Detchemendy, presents any obstacle to the proceeding instituted in this case by the plaintiffs.   3. Whether the sheriff's deed for the title of Pascal Detchemendy in the

whole tract can be made operative, when it appears by the finding of the court never to have been sealed.

1. The two deeds made to Clement Detchemendy were made on the 20th of July and the 21st September, 1821, and were acknowledged by Pascal Detchemendy and his wife, but the acknowledgment of the wife was not certified in conformity to the act of 22d June, 1821, directing the mode of acknowledgment of conveyances by which the property of married women might be affected. Pascal Detchemendy and his wife were married in 1798, having entered into a marriage contract which, it is said, established a community that included the property claimed by the plaintiffs. The particular provisions of the marriage contract need not be stated, nor the language which relates to the community criticised, for the result at which we arrive will be the same in relation to the effect of the conveyances, whether the land was included in the community or not. It will be taken then, that this property was part of the property included in the community established by the marriage contract, that the marriage was under the Spanish law, and that the inchoate titles which were acquired under that law were afterwards confirmed by the government of the United States. If that law had continued in force, the husband, as the head of the community, might have sold the land and conveyed it in his own name, without the consent of the wife. *Smallwood* v. *Pratte*, 3 Robinson, 132. *Preston* v. *Humphreys*, 5 La. R. 299. *Sprigg* v. *Boisier*, 5 Mar. N. S. 54. *Guice* v. *Lawrence*, 2 An. L. R. 226. *Glenn* v. *Elam*, 3. An. La. R. 611.

Did the change in our system, by the introduction of the common law, affect the relations subsisting between the husband and wife, and the control over, and mode of disposing of the property of the community, so that the husband was no longer able to sell the property, and so that it could not be conveyed even with the consent of the wife? The question may as well be put in this form, because if the interest of the

wife in the property of the community was any such absolute, separate interest as could, with propriety, be called her estate, then the common law recognized no conveyance of such estate by the husband, even with the consent of the wife, even if she should join in the deed of conveyance. The only mode of alienation of such property was by fine, a species of assurance never used or known in this country.

It is undoubtedly true, that the Spanish law was a system capable of application to all cases that could arise between subjects of the government professing to regulate their rights and duties, and to afford redress for wrongs sustained. When such a system is by a short act of the legislature displaced, and another system adopted which regulates and protects the rights and duties of citizens, it is but natural that many perplexing questions should arise in reference to relations established and rights acquired under the former system. In considering such questions, the numerous cases which have been decided upon the conflict between the laws of different states and nations have no application, for here the systems are both domestic laws, which have been in force, at different periods, within the same country. We are not at liberty to impute to the legislature a design to abrogate or interfere with the rights which parties may have acquired under the Spanish law, nor would they have possessed the power, in relation to any vested rights of property, if they had intended any such interference. The two systems differ very materially in the rights which they respectively recognize, as resulting from the act of marriage, although those rights may be, under both systems, regulated by the contract of the parties. Where there is no stipulation between them, each law declares the consequences, in relation to property, which shall follow from the marriage. In the present case we have an express contract by which the parties bring their present property and future acquisitions into a community, " according to the customs and usages of this place, upon which their community shall be regulated." Assuming, then, that this property was either brought into the community by the husband,

or was acquired by the joint industry of the parties after the marriage, the husband might, at the time it was acquired, have lawfully sold it without the consent of the wife. Was this power of the husband abrogated by the introduction of the common law? It is to be observed that all the property of the community was to be applied to the payment of the debts of the community, and the proper application of it was made by the husband, who was at the head. This was done by the intervention of the law, upon the dissolution of the community by death, but during its continuance by the husband. The right which the wife had in the property of the community, acquired during the marriage, was not the estate of a joint owner, entitled to claim its administration or to call the other owner to account. It is said by Febrero that the ownership of the wife is revocable and fictitious during marriage. As long as the husband lives and the marriage is not dissolved, the wife cannot say that she has acquisitions, nor is she to prevent her husband from using them, under the pretext that the law gives her one half. But the marriage being dissolved, she becomes irrevocably the owner of one undivided half, in the manner provided by law for joint ownership. The husband is, during the marriage, the actual and true owner of all. Febrero, book 1, ch. 4, paragraph 1, Nos. 29 and 30.

The community established by the contract between Detchemendy and his wife, was to be regulated by the usages and customs of the province, and in the absence of any peculiar usage or custom, the Spanish law will be understood to be the rule for its administration. The parties have stipulated about the extent of the community, and when, according to the stipulations, the acquisitions made after the marriage have been brought in, their administration is provided for. The husband, as the head, is invested with rights in the property, to control and dispose of it for the benefit of the fund in which both are interested. It is essential to the preservation of the interest which is created by the contract, that the property in the community shall be administered by the husband. It is certainly

true that, when parties, before marriage under the Spanish law, have stipulated for a community, it would not be understood to be within the meaning of an act introducing the common law, that the community should be abolished. If it remains in force for the purpose of keeping the spouses common in their acquisitions, it must continue in force for the purpose of appropriating the property of the community to the payment of the debts, and for the purpose of authorizing the making of contracts by which such debts may be created. The mode of disposing of the property for the benefit of the community may, as to the forms, be changed by law, but in adopting the common law as a system, the interests of the wife are not so changed as to vest her with a separate estate or interest in the property of the community, nor is the property of the community or any part of, or any interest in it, inalienable by the husband, because of any interest the wife has in the property. While he still remains the head of the community, charged with the duty of administering its effects, any conveyance made by him which, under the law then in existence, would be effectual in form to convey his own estate, will be effectual to convey the property of the community. This is but a natural consequence of continuing in the husband the power to dispose of the community property, and holding that the wife has not, during the community, any separate interest in the property. It follows, from these positions, that the deeds of Pascal Detchemendy and wife to Clement Detchemendy were effectual to convey the property, admitting it to form part of the community, and that it was not necessary for the wife of Pascal to make any form of acknowledgment of the deeds as of deeds conveying a wife's separate estate under the statute in force at the time.

2. The second question is, whether the mortgage made by Pascal Detchemendy to Chouteau and others can be regarded as an outstanding title, defeating the present proceeding of the plaintiffs. That mortgage was made, acknowledged and recorded on the 27th June, 1822, and there is no fact found by

the court, nor any evidence given by either party, in relation to the possession of the property under it, nor the payment of interest on the debts. It is used in evidence at the trial in November, 1852, more than thirty years from its date. When a mortgagor remains in possession of the property mortgaged for more than twenty years, without evidence of the acknowledged subsistence of the debt, the debt is presumed to be satisfied; when the mortgagee is in possession, claiming as owner for more than twenty years, the equity of redemption is presumed to be extinguished. In the present case, when the parties are contending in a civil action, which blends law and equity, when both parties claim under Pascal Detchemendy, and neither under the mortgagees, when the mere instrument of mortgage is set up to defeat the plaintiffs' action, without any evidence in relation to the possession, or the present existence of the debts, the mortgage is entitled to no consideration as a bar.

3. The third question to be considered is, the value of the conveyance by the sheriff of the right of Pascal Detchemendy to St. Gemme. This title the defendants claim. The instrument produced in evidence appears to be in the ordinary form of a sheriff's deed. The language of the instrument purports that it was signed and sealed by Francis Valle, the sheriff, but there does not appear to be any scrawl attached to the name of Valle. The conveyance itself was made in July, 1823, and it is acknowledged as a deed. Although the statutes of this state have always permitted the use of a scrawl by way of seal, yet this has not superceded the use of the actual seal, which is an impression upon wax or other tenacious substance. If, in the present case, the court, under the law authorizing presumptions to be made, had found the instrument to be the deed of the sheriff, the question which has been made by the counsel would have been considered in this court, whether the case made by the evidence justified such presumption; but the court has plainly found that the instrument was not sealed by the sheriff. We have, then, to deal with a case in which the fact is found, that a conveyance made by a sheriff for land sold on execu-

tion, was not sealed. The statutes have always required such conveyances to be by deed, that is, under the seal of the officer.

The Circuit Court, treating the case as one of the class where parties have made an agreement for the conveyance of land and ineffectually executed it, courts of equity exercise their power to aid the incomplete or imperfect execution, has made a decree passing the title of the complainants to the defendants. The statutes, since 1807, have contained provisions for the completion of sales and the execution of conveyances by sheriffs, where there has been a change in the officer, and these statutes furnish the remedy to be applied in such cases and not the power of a court of equity. Courts of equity do not carry into effect, by their decrees, the incomplete execution of statutory powers. *Bright* v. *Boyd*, 1 Story's R. 486. 1 Story's Eq. sec. 97, 177.

The judgment is, with the concurrence of the other judges, reversed, and the cause remanded for further proceedings.