## BOYKIN *vs.* RAIN.

[ACTION UNDER CODE, IN NATURE OF EJECTMENT, TO RECOVER POSSESSION OF LAND.]

1. *Mortgage by husband of wife's land.*—If the husband, during coverture, and after issue born, execute a mortgage of his wife's land, the deed conveys all his interest as husband and tenant by the curtesy initiate.

2. *Acknowledgment by deed of feme covert.*—An acknowledgment by a married woman, on private examination apart from her husband, "that she signed,

Boykin v. Rain.

sealed, and delivered the above instrument, on her own free will and accord, and without any force, persuasion, or threats from her said husband, and for the express purposes therein stated", is not a substantial compliance with the provisions of the statute (Clay's Digest, 155, § 27), which requires an acknowledgment "that she signed, sealed, and delivered" the deed, "as her voluntary act and deed, freely, without any fear, threats, or compulsion of her said husband.

3. *Feme covert, how made defendant to bill.*—When a married woman, a resident of this State, is named as a defendant to a bill, together with her husband and others, and there is no service of subpœna on her husband, as required by the 4th rule of chancery practice, no plea, answer, or demurrer filed by her and her husband, or by either of them, and no order that she might answer or defend separately, or that she might appear by solicitor or in any other manner,—publication against her as a non-resident, and her appearance by solicitor, do not give the court jurisdiction of her person, and the decree is not binding on her.

4. *Decree of divorce, effect of.*—A decree of divorce *a vinculo*, in favor of the wife, defeats and determines all the rights and interest of her husband in and to her lands, and of others claiming under a mortgage executed by him, and restores her rights precisely as her husband's death would have restored them.

APPEAL from the Circuit Court of Washington.

Tried before the Hon. ANDREW B. MOORE.

This action was brought in August, 1854, by James M. Boykin against Daniel Rain, to recover the possession of a certain tract of land, which the plaintiff claimed in right of his wife, together with damages for its detention. The bill of exceptions, sealed at the instance of the plaintiff, is as follows :

" On the trial of this cause, the following facts were proved : That the land in controversy was originally the land of Sarah M. McGrew; that she married Robert F. Hazzard, and had by him one child ; that said Hazzard and wife, during the coverture, mortgaged the land to the Life Insurance and Trust Company in Mobile, which mortgage, with the assignment, endorsement, and acknowledgment thereon, is made a part of this bill of exceptions, marked 'A'; that said insurance company assigned said mortgage and land to Joseph Kernochan, which assignment is endorsed on said mortgage; that said mortgage purported to be foreclosed in the chancery court of Mobile, of the proceedings of which foreclosure suit a transcript is hereto attached as a part of this bill of exceptions, marked ' B'; that said Sarah, in the

year 1852, was divorced *a vinculo matrimonii*, on her bill in the chancery court, filed against said Hazzard, which decree was ratified by an act of the legislature of Alabama; that in the same year, and soon after said divorce, she married the present plaintiff, who had one child after said marriage; and that in the year 1853, before this suit, the said Sarah died. It was in evidence, also, that said insurance company bought at the sale made under said Kernochan's foreclosure, and obtained the register's deed to the land in controversy, and conveyed by deed to the present defendant on the 1st December, 1849, of which deed a copy is hereto annexed. It was in evidence, also, that the land was in the possession of the defendant, under his said deed, at the time of the (plaintiff's) said marriage, and so continued during the coverture. It was proved, also, that said Sarah was born in Alabama, and never was out of the State; and that the defendant went into possession, with the knowledge and assent of Mrs. Boykin. The annexed letter from said Sarah to the defendant, dated January 3, 1850, was also proved", which letter contained a proposal to re-purchase the said land.

" Upon this evidence, the court charged the jury, that, upon the facts before them, they must find for the defendant, unless said decree in chancery, and the proceedings to obtain the same, were fraudulent in fact, and obtained with intent to defraud plaintiff and his wife out of said land; that this was the only question for them to consider; that if fraudulent, they must find for the plaintiff, and if not, for the defendant; that if the statements in the transcript were simply erroneous, and consisted only of mistakes, this would not be fraud, but the bill must have been filed and carried on with the object and intent of defrauding. To this charge, and to each part thereof, the plaintiff excepted", and he now assigns it as error.

The mortgage referred to in the bill of exceptions, dated 7th February, 1844, was acknowledged by Mrs. Hazzard before a notary-public, whose certificate, appended to the deed, is in these words: " This is to certify, that Mrs. Sarah M. Hazzard, wife of Robert F. Hazzard, esq., was examined and interrogated by me, privately, and apart from her said husband, Robert F. Hazzard, when she declared that she signed,

sealed, and delivered the above instrument of mortgage deed, on her own free will and accord, and without any force, persuasion, or threats from her said husband, and for the express purposes therein stated. In witness whereof", &c.

The bill to foreclose was filed by said Kernochan on the 1st January, 1846, against said Hazzard and wife and said insurance company as defendants. Publication was ordered against Hazzard and wife, as non-residents, on the affidavit of the complainant's solicitor; and a decree *pro confesso* was entered against "the defendants" on proof of publication. A reference to the master was ordered, to ascertain and report the amount of the mortgage debt; and on the confirmation of his report, a decree of sale was rendered, which was declared to be of no effect, as to Hazzard and wife, until the complainant executed the statutory bond required in case of non-resident defendants. An amended bill was afterwards filed, bringing to the knowledge of the court an alleged mistake in the description of the land contained in the mortgage, and bringing in as defendants several judgment creditors who had levied on the land; and the cause again proceeded to a final decree. The facts shown by the record, on which the questions respecting the validity of these proceedings are predicated, will be readily understood from the briefs and opinion.

JOHN T. TAYLOR, for the appellant:

1. The divorce *a vinculo*, obtained by Mrs. Hazzard, divested all the marital rights of her husband, and of those holding under him, and remitted her to her original ownership.—10 Paige, 420; 10 Conn. 225; 9 *ib.* 541; 10 Mass. 260; 2 Maryland, 429; 9 Vermont, 326; 3 Texas, 336; 1 Tyler, 414; 2 Ashm. 455; Shelford on Divorce, 470; 1 Fonb. 311; Roper on Wills, 71. The plaintiff's subsequent marriage with Mrs. Hazzard, and her death, gave him the use of all her lands for life.—Code, §§ 1982, 1990.

2. The defence is rested on a mortgage, purporting to have been executed by Mr. and Mrs. Hazzard, and its foreclosure in chancery. But these proceedings, it is contended, are void for want of jurisdiction. The transcript of the suit shows two bills and two decrees. In the first bill, it was attempted to make Mrs. Hazzard a defendant by publication, as a non-

resident; and in the second, subpœnas were issued. The court cannot get jurisdiction of the person of a non-resident, except in the mode provided by the statute; and the first requisite of the statute is that an affidavit must be filed, which was not done in this case. Neither was the order or proof of publication sufficient.—6 Barbour, 610; 7 *ib.* 255; 1 Peters, 340; 11 Howard, 437; 12 Ala. R. 122; 6 Monroe, 192; 1 Michigan, 480; 4 Peters, 470; 11 Wendell, 652; 9 Cranch, 64; 1 McLean, 321; 4 Equity Digest, 488, § 20. Besides, Mrs. Hazzard was not a non-resident: she was born and died on the lands in controversy, and never was out of the State. A resident citizen can only be made a party in chancery by service of subpœna.—Code, § —; 4 Peters, 475; 1 Bland, 236; *ib.* 550; 11 Serg. 430. But, admitting that these proceedings are valid, they are entirely against Mrs. *Mary F.* Hazzard, and are of no effect as against Mrs. *Sarah M.* Hazzard, under whom the plaintiff claims.—20 Pick. 439; 2 English, 395.

As to the amended bill, it is not pretended that any subpœna was served. Two writs were issued, but were returned not found; and no affidavit or publication was made. It is true the decree recites that "the parties came", &c., but this is not a general appearance; and it has been expressly decided, by this court and others, that a recital of this kind refers only to the parties who have been served with process. 2 Stewart, 41; 3 *ib.* 331; 6 Pick. 232; 14 Sm. & Mar. 76; 1 Peters, 340. The recitals in the decree as to publication and affidavits are to be disregarded.—10 Barbour, 547; 6 *ib.* 607; 5 *ib.* 48; 6 Pick. R. 246; 4 Monroe, 544; 9 Cranch, 64; 1 McLean, 321; 4 Ala. 249; 21 *ib.* 586. Again, the statute under which this decree was rendered, and the decree itself, declare that it shall be of no force or validity, until the plaintiff gave the bond required; and no bond was ever filed.

3. As to the mortgage, disconnected from the chancery proceedings : The defendant was not in a condition to set it up as an outstanding title.—5 Wendell, 603; 20 *ib.* 260; 6 Hill, 464; 3 Har. (N. J.) 380; Adams on Equity, 31; 10 Ala. 269. But the mortgage itself was not binding on Mrs. Hazzard, because, 1st, the notary had no authority to take the acknowledgment; and, 2dly, the acknowledgment itself is

not sufficient.—16 Ala. R. 140; 1 Peters, 328; 12 *ib.* 345; 1 Har. & J. 291, 513; 2 Story's. Equity, § 1391; 4 How. U. S. R. 226–8; 10 Serg. & R. 445.

WM. BOYLES, with whom was D. C. ANDERSON, *contra:*

1. The first objection raised to the validity of the proceedings in chancery, is, that the name of Mrs. Hazzard is not correctly stated in the original bill. It is a sufficient answer to this objection, that the mortgage, which is made an exhibit to that bill, shows her true name; and that the amended bill, with all the subsequent proceedings under it, states the correct name.

2. The second objection. is, that the record does not show proof of publication as to the non-resident defendants. The answer is, that the sale of the mortgaged lands, the subject of this suit, was a judicial proceeding, made by a court having jurisdiction of the subject-matter and of the parties, and was therefore conclusive. The jurisdiction of the court over the parties is apparent on the face of the record. In the original bill, Hazzard and wife are stated to be non-residents, and an order of publication was made as to them; and in the order transferring the cause, as well as in the final decree, it is stated that the parties appeared by their solicitors. This shows the jurisdiction of the court over the parties, and that its power was brought into action; and whenever that is the case, the judgment of the court is conclusive.—10 How. 371; 2 *ib.* 319; 2 Peters, 167; 3 Wheat. 246, 340. The record also shows an appearance by the defendants' solicitor on several other occasions. The defendants are bound by these recitals.—6 Ala. 503; 9 *ib.* 272; 5 *ib.* 167; 8 *ib.* 467; 17 *ib.* 701; 22 *ib.* 131; 25 *ib.* 617; 3 Por. 267; 8 Shep. 38.

3. But, even if the decree of foreclosure be irregular and erroneous, it cannot be impeached in .this collateral way. The defendants might have reversed the decree, on appeal; but the purchaser cannot be required to go beyond the order authorizing the sale. "Were the law otherwise, judicial sales would become traps and snares for honest men."—Cole v. Connolly, 16 Ala. 280. The purchaser at judicial sales is never responsible for the mistakes or irregularities of the court or its agents.—2 Peters, 169; 11 Serg. & R. 429. The

principle which gives sanctity to the proceedings of courts of competent jurisdiction, has always been deemed inviolable; being, in fact, rules of property, the source and foundation of titles, on which the repose of the country depends. The final decree and sale were made more than three years before the death of Mrs. Boykin, then Mrs. Hazzard; and the defendant's purchase was made with her knowledge and assent. The defendant's title, so far as these parties are concerned, is perfect.—10 Peters, 449, and cases there cited.

4. The filing of the bond, as required by the decree of the court, was a ministerial, not a judicial act; and it was not necessary that it should form part of the record, the presumption being that it was filed. Besides, the proof shows that Mrs. Hazzard was a resident of this State, and therefore no bond was necessary; and the statute has no application, where the parties appear.—5 Ala. 158; 9 *ib.* 180; 14 *ib.* 33.

5. The question as to the sufficiency of the acknowledgment, is covered by the decree of the court, directing the foreclosure of the mortgage. The parties appeared, and should have then litigated the question. Besides, the acknowledgment is a substantial compliance with the requisitions of the statute, and the act of 1831 (Clay's Digest, 154) authorized it to be taken by a notary-public.—19 Ala. 759; 2 *ib.* 203, 452, 482; 20 *ib.* 112; 12 How. 267. [See this point elaborated in petition for re-hearing.—Rep.]

RICE, J.—Prior to the 7th February, 1844, Sarah M. McGrew, being the owner of the land now in controversy, married Robert F. Hazzard, and had by him one child. During the coverture, and on the day aforesaid, they executed a mortgage of the land, to secure the payment of certain notes made by him. The certificate of a notary-public, dated the 22d February, 1844, and written under the mortgage, shows that the acknowledgment made by her before him, on a private examination apart from her husband, was, "that she signed, sealed, and delivered the above instrument of mortgage deed, on her own free will and accord, and without any force, persuasion, or threats from her said husband, and for the express purposes therein stated."

Upon these facts it is clear, that the interest of Robert F.

Hazzard in the land of his wife—to-wit, his interest as husband and tenant by the curtesy *initiate*—passed by the mortgage.—Barber v. Harris, 15 Wend. 615; 2 Bla. Com. 126-8.

The first question, of any difficulty, to be considered, is, whether the estate of his wife in the land did not pass by the mortgage.

By the law of this State, as it existed in 1844, a married woman under the age of twenty-one years was absolutely incapable of conveying lands, tenements, or hereditaments, lying and being in this State, or any right, interest, or estate therein; and a married woman over that age could not pass her estate in lands, tenements, or hereditaments, lying and being in this State, "without a previous acknowledgment made by her on a private examination, apart from her husband", before an officer authorized by law to take such acknowledgment, "that she signed, sealed and delivered the same, as her voluntary act and deed, freely, without *any fear*, threats, or compulsion of her husband, and a certificate thereof written on or under the said deed or conveyance, and signed by the officer before whom it was made."—Clay's Digest, 155, § 27.

Under this law, the mere execution by a married woman of a mortgage would not pass her estate in land. To give it any efficacy as a conveyance of her estate, it was essential not only that it should be executed by her, but that it should have been acknowledged and certified in the mode prescribed by the law, and that she should have been twenty-one years of age at the time of the execution and acknowledgment.

It does not appear that Mrs. Hazzard was twenty-one years of age when she executed and acknowledged the mortgage. But, even if that fact did appear, her acknowledgment on her private examination, as certified by the notary-public, is not, either in words or substance, the acknowledgment prescribed by law. It was essential that she should acknowledge, amongst other things, that she executed the mortgage "without *any* fear." She has not acknowledged this, nor any thing *in substance the same*. It will not do to say she has acknowledged something *like* it. Resemblance is not identity. Fear may exist on the part of the wife, "without any force, persuasion, or threats" from the husband. Her acknowledg-

ment, that she executed the deed on her own free will and accord, is not identical in substance with an acknowledgment that she executed it freely, without any fear of her husband. Fear may exist, and often does exist, in a degree so moderate as not to destroy the freedom of the will. Thus, " by faith, Noah, being warned of God of things not seen as yet, moved with fear, prepared an ark to the saving of his house."—Hebrews, ch. 11, verse 7. A deed, executed with very slight fear, by a person *sui juris*, could not, for that cause only, be set aside. Fear may exist to a degree which amounts to undue influence, or moral coercion. But it may exist in a much more moderate degree, and fall far short of undue influence, or moral coercion. It need not, and may not, be the predominant motive.—Matthews v. Bliss, 22 Pick. 48. If the words contained in the acknowledgment, by a married woman, of the execution of a deed purporting to convey her land, do not exclude, or negative, the idea that, at the time she executed the deed, any fear of her husband existed, the acknowledgment is insufficient, without regard to the degree of that fear. Her acknowledgment, that she executed it of her own free will and accord, does not negative the existence of fear in its mildest and most moderate degree.

We cannot dispense with any requirement of the law (Bright v. Boyd, 1 Story's Rep. 486; 1 Story's Eq. §§ 97, 177); and as the acknowledgment under consideration is not such as was prescribed, the mortgage did not pass the estate of Mrs. Hazzard in the land.—Hollingsworth v. McDonald, 2 Harris & Johns. 230; Chauvin v. Wagner, 18 Missouri R. 531; Elliott v. Piersol, 1 Peters, 338; Gill v. Fauntleroy, 8 B. Monroe, 178; Jourdan v. Jourdan, 9 Serg. & Rawle, 274; Flanagan v. Young, 2 Har. & McH. 38; Martin v. Dwelly, 6 Wend. 9; Green v. Branton, 1 Dev. Eq. Rep. 500; Bright v. Boyd, 1 Story's Rep. 487; 1 Story's Eq. Jur. §§ 96, 177; Moreau v. Detchemendy, 18 Missouri Rep. 522; Warren v. Brown, 25 Miss. R. 66.

But it is contended, that, although the mortgage is wholly ineffectual to pass her estate, yet she was divested of it by the proceedings under the bill to foreclose the mortgage; and this position is now to be examined.

That bill alleges that the mortgage was executed by her

husband and herself, but does not allege any fact which, even if true, did or could make it operative to pass her estate in the land. It does not allege that, at the time of its execution, she was twenty-one years of age, nor that it was acknowledged and certified in the manner made essential by our law to give it efficacy as a conveyance of her estate, nor that she had a separate estate in the land, or in any other property. It names her husband and her as defendants, but does not allege that either of them is a non-resident. It is clearly shown that, during her whole life, she was a resident. She was never made a defendant, by service of subpœna upon her husband, as required by our fourth rule of practice in chancery. As she was a resident, the publication made was void as to her, and did not make her a defendant. No plea, answer, or demurrer was filed by her husband and her, or by either of them. No order was applied for, or made, that she might answer or defend separately, or appear by solicitor, or in any other manner. Although there are in the minutes and final decree such recitals as the following, "The complainant and defendants appear by their solicitors, and consented in open court that the former connection of the chancellor with this cause as solicitor should interpose no obstacle to his decision of it",—yet there were several persons other than her and her husband, named in the bill as defendants, who had actually been made defendants by service of process, acceptance or waiver of service, or by publication. These other persons were persons *sui juris*, and capable of appearing by solicitor, and of waiving service of process and publication and any other provision of law made for their benefit and protection. During the whole time the suit for foreclosure was pending, she had no separate estate in the land, and was not in any respect a person *sui juris*. The decree in that suit directed the register to sell the land, but did not on its face determine *whose* interest, nor the *quantum* of interest which should be sold. The register sold the land, and reported the sale; and thereupon the court decreed, that the report be confirmed, " that the defendants' equity of redemption into and out of said premises be forever barred and foreclosed, and that the purchaser be let into possession thereof." Upon these facts we decide, that the estate

of Mrs. Hazzard in the land was not divested, and did not pass by the proceedings under the bill for foreclosure.— Shriver's Lessee v. Lynn, 2 How. (U. S.) Rep. 43; Hollingsworth v. Barbour, 4 Peters, 475; Lesse of Walden v. Craig, 14 Peters, 154; Webster v. Reid, 11 How. Rep. 437; Denning v. Corwin, 11 Wend. R. 647; 3 Phil. on Ev. (edition of 1839) 998, 1002; Hollinger v. Bank, 8 Ala. R. 605; Clay's Digest, 612, § 4; 1 Smith's Ch. Pr. 193, 253, 254; Elston v. Wood, 2 M. & K. 678; Hodgson v. Merest, 9 Price, 556; Hughes v. Evans, 1 S. & S. 188; Mole v. Smith, 1 J. & W. 665; Calvert on Parties, 265, 272; Ex parte Halsam, 2 Atk. 49; Clay's Digest, 354, § 58; Gee v. Cottle, 1 M. & C. 180; Dyett v. N. A. Coal Co., 20 Wend. 570; Ferguson v. Smith, 2 Johns. Ch. R. 139.

The proceeding for foreclosure was a proceeding not *in rem*, but *in personam*. It was essential to the validity of the decree therein rendered, as to Mrs. Hazzard, that the court should have had jurisdiction of her person, as well as of the subject-matter. She was a resident married woman, without any separate estate. The fourth rule of our practice in chancery prescribed the mode in which the court might acquire jurisdiction of her person. The court did not acquire such jurisdiction in that mode, and there is nothing in the record which shows that the court ever did acquire such jurisdiction. In the absence of any compliance with our fourth rule of practice in chancery, in the absence of any plea, answer or demurrer on the part of her or her husband, in the absence of any order applied for or made that she might appear by solicitor, or that she might answer or defend separately, *her appearance by solicitor*, whether that solicitor was appointed by her husband or herself, would not give the court jurisdiction over her person. We do not decide that, *after the jurisdiction of the court over the person of the wife has attached*, the husband cannot appoint a solicitor for himself and her. But we do decide that, *under the circumstances hereinabove stated*, the court could not acquire jurisdiction over her person, *merely from his* appointment of a solicitor, and the appearance of that solicitor for her. There is no law or rule in this State which enables *him*, by any such voluntary act, *to give the court jurisdiction over her person*, or to bind her by a

decree in a suit for foreclosure rendered without any notice
to her, either actual or constructive, and without any oppor-
tunity to her to defend.—Hollingsworth v. Barbour, *supra;*
3 Phil. Ev. (edition of 1839), 865, and cases there cited from
the Louisiana Reports; Lyerly v. Wheeler, 11 Iredell's Rep.
288; Sanford v. Granger, 12 Barb. Sup. Ct. Rep. 392.

We may concede, that where persons who are *sui juris*
appear by solicitor, they give to the courts jurisdiction over
their persons, by such appearance.—Catlin v. Gilder, 3 Ala.
R. 536; Puckett v. Pope, 3 Ala. R. 552. But, in this re-
spect, there is an essential difference between a person *sui
juris* and a person who is not in any respect *sui juris.*

By the law, as it existed at the time Robert F. Hazzard
married Sarah M. McGrew, he gained by the marriage a title ·
to the rents and profits of her land, *during the coverture.* By
the birth of issue, he became tenant by the curtesy *initiate.*
But his right, as well as the right of those claiming under
the mortgage executed by him, ceased and was defeated by
the divorce *a vinculo* granted to her; and by that divorce, her
right, which had been suspended during the coverture, was
restored to her precisely as it would have been restored to·
her by his death.—Wheeler v. Hotchkiss, 10 Conn. Rep. 225;
Barber v. Root, 10 Mass. Rep. 260; Renwick v. Renwick,
10 Paige, 420.

After this divorce, and in 1852, she married the appellant,
and afterwards gave birth to a child. After this, and in
1853, and before this suit was commenced, she died, without
having disposed of the land, leaving her husband, the appel-
lant, living. If the common law had remained unchanged,
he would, upon the facts above stated, have been " a complete
tenant by the curtesy", and entitled as such to hold and use
the land during his life.—2 Bla. Com. 126, 128; Preston on
Estates, 516. But by the act of March 1, 1848, to secure to
married women their separate estates, and the act of Feb-
ruary 13, 1850, amending that act, the husband does not
acquire any right to the property which his wife had upon
his marriage or acquired afterwards, except as provided
for in said acts. The right of the appellant asserted in the
present case, is to be determined by the provisions of the
last-mentioned act, which was of force at the time of his mar-

riage, or by the provisions of the Code, which went into effect on the 17th January, 1853.—Code, § 1990. We shall not now decide, whether the act of February 13, 1850, or the Code, must govern this case. The question was not decided in the court below. It may not be necessary to decide it; for, although appellant's wife died in 1853, it does not appear that she died after the Code went into effect.· She may have died before the 17th January, 1853. And whether the Code, or the act of 1850, governs in deciding upon the right asserted in this suit by appellant, it is clear from what we have hereinabove decided, that the court below erred in its charge to the jury. For that error, its judgment is reversed, and the cause remanded.·

NOTE BY REPORTER.—The foregoing opinion was delivered on the 15th January, and an application for a re-hearing was afterwards made by Messrs. D. C. ANDERSON, WM. BOYLES, and ROBT. H. SMITH, of counsel for the appellee, who submitted the following argument in support of their petition :

In the opinion of the court, recently delivered, it is decided that the defendant has no title to the premises sued for, 1st, because the certificate of Mrs. Hazzard's acknowledgment of the mortgage is not a sufficient compliance with the statute, and therefore did not divest her of title; 2dly, because it does not appear that Mrs. Hazzard, at the time of the conveyance, was twenty-one years of age; and, 3dly, because the decree in chancery, foreclosing the mortgage, and divesting the title. of Mrs. Hazzard, is void as to her. The ·counsel for the appellee feel confident that, upon a re-examination of the points arising on the record, and of the authorities referred to by the court, as well as of other analogous cases, a different conclusion will be arrived at; and they therefore respectfully ask a re-hearing.

1. As to the effect of the certificate of acknowledgment [for which see the preceding statement of facts.] The statute under which this acknowledgment was taken, is in these words : "No estate of a *feme covert* shall pass by her deed or conveyance, without a previous acknowledgment made by her, on a private examination apart from her husband, before one of the territorial judges", &c., " that she signed, sealed

and delivered the same, as her voluntary act and deed, freely, without any fear, threats, or compulsion of her husband, and a certificate thereof written on or under the said deed, and signed by the officer before whom it was made", &c. The objection made by the court to this certificate is, that the word *fear* is omitted from it. We respectfully submit that, under our statute, the word *fear* is not essential to constitute a good certificate, that any other words of equivalent import are sufficient, and that this certificate is a substantial compliance with the law. While it is conceded, that (in the language of the court) "*fear may exist* on the part of the wife, without any force, persuasion, or threats from her husband"; yet it is difficult to conceive how the mind may act *freely, of its own will and accord*, and yet be governed in that act by *fear*. To act *freely, on one's own accord*, and yet to act in the same thing under the effect of *fear*, is a plain solecism, and a moral contradiction. Freedom of the will necessarily implies independent volition, or the absence of all external controlling agency. If *fear* enter into the mind, and be in any degree the cause of its decision, the will is not *free*—there is no self-will in the result. The object of this statute, and indeed of all the American legislation on this subject, was, while getting clear of the cumbrous system of fine and recovery, to provide at the same time a convenient mode of conveying the wife's real estate, and protecting her interests from the supposed influence of her husband. The statute points out a mode for ascertaining whether the wife had freely executed the deed, and requires the evidence of that fact to appear in the certificate of the officer before whom the acknowledgment is made; but no special form of words is provided for that purpose. Neither our law, nor that of any other State in the Union, has prescribed a form which is made indispensable. The wife's *voluntary consent* to the conveyance is the main object required by the law; and her declaration to that effect, before the proper officer, and in the absence of her husband, is the proof of such consent. The accumulation of phrases, of equivalent or similar import, would add nothing to the real object of the law. If she executes the deed *of her own free will and accord*, and under neither the persuasion nor coercion of her husband, how is the proof of voluntariness ad-

vanced by the negative addition that it was not under the
influence of fear? The declaration that she acts "*on her own
free will and accord*", excludes the idea of *fear* as a motive of
action.

This very point has received an illustration by the supreme
court of Ohio, in the case of Brown v. Farran, 3 Ohio, 153,
to which the court is referred. They say :—" The third ob-
jection is, that it does not appear from the certificate that the
wife acted without fear or coercion of her husband. It is
true that those words are not contained in the certificate;
but the justice certifies that she acknowledged the deed to be
her voluntary act; and if voluntary, it could not have been
done under the influence of fear or coercion. The term
'voluntary' is defined to be, 'acting without compulsion',
'acting by choice', 'willing', 'of one's own accord.' The
declaration of the wife, then, on her separate examination,
excludes the idea of fear or force. If she executed the in-
strument willingly, of choice, and of her own accord, as her
admission before the justice imports, she could not have been
under the influence of fear, much less of coercion. An action,
done in consequence of fear, cannot be done willingly and of
choice. The one unavoidably excludes the other. So that
the magistrate, although he has not used all the words given
in the statute, has taken one which includes the substance of
all the rest. It will not be seriously contended that the
magistrate is bound to use the same language that he finds in
the statute. The legislature has not undertaken to prescribe
a form of acknowledgment that is to be literally pursued.
If the certificate contains the substance of the law, though in
the language of the officer, it is sufficient. On any other
principle, it is a matter of doubt whether the records of the
State contain a solitary deed with a valid acknowledgment.
It is, however, safe and prudent, to adopt the language of the
act, with but little (if any) variation; and yet it would be
attended with destructive consequences to consider such an
adherence as essential to the validity of an acknowledgment.
If she understood what she was doing, and, in the absence of
her husband, admitted that she had done it, and that she did
it voluntarily, which implies the absence of fear or coercion,
her rights have had all the protection which the law intended

to afford, and she cannot be permitted to revoke her deed for any defect of form."

In the cases of Chesnut v. Shane's Lessee, 16 Ohio, 599, and Ruffner v. McLenan, *ib.* 639, the subject of the acknowledgment of deeds by *femes covert* was very fully and ably considered; and in the latter, the case of Brown v. Farran was reviewed and approved. Indeed, the latter case, in sustaining the validity of such acknowledgments, goes greatly beyond the ground taken in Brown v. Farran. In allusion to the decision in Brown v. Farran, the following just and strong language, which has peculiar pertinence to this case, was there used :—" Any other decision would have shaken the title to many millions of property, which had been acquired by the then present holders by fair and *bona fide* purchase. A contrary decision, it is true, might have enabled many widows to reclaim property, which had been, by their consent, sold and conveyed, for an ample consideration; or it might have enabled them to enforce claims for dower, to premises for the conveyance of which they had joined with their husbands, and done all that on their part could be done to make such conveyance effective. And if such conveyances are not held to be effective, it is for the sole reason that an officer, whose duty it was to take an acknowledgment of the conveyance, has omitted some technical formality in reducing the certificate of acknowledgment to writing. Another reason why I assented to the principle of this decision, and why I am still willing to adhere to those principles, is, that I am unwilling to adopt any rule of construction of a statute, or to recognize any principle of law, which will encourage any portion of the community, whether male or female, in fraud or dishonesty."

The same point came up before the supreme court of New Jersey, in Den v. Geiger, 4 Halsted, 225, where it was determined, upon a very full examination and review of the authorities, that a certificate of acknowledgment, which omits to state that the grantors executed the deed *voluntarily*, and that the acknowledgment of the wife was on a private examination, and without any *fear*, may be good, if it contain words equivalent to those omitted. The words of the New Jersey act, quoted on page 228, are precisely the same with

our act now under consideration. After speaking of the proper mode of construing the act, and that a substantial compliance was sufficient, it is there said,—" This objection [as to the legislature using more words than were necessary] finds its answer in the same section; for, if the *feme covert* executed the deed freely, she must have done it voluntarily, and without fear, threats, or compulsion. Hence it appears they were very properly · not sparing of words, when these might tend more fully or clearly to express their meaning. The censure cast on this acknowledgment, for the want of the word *fear, is entirely too severe a criticism*, if a substantial compliance satisfies the act. It is very possible, as remarked by counsel in the argument, that fear may exist without threats; but it is not very easy to suppose there can be fear, if there be no compulsion; and if the wife executed the deed 'freely and voluntarily', she must necessarily have been without fear. These expressions negative, in the most unequivocal and exclusive manner, the presence of fear." In this same opinion it is said, that the question raised was one of incalculable importance; that it interested, in a greater or less degree, almost every freeholder in the State; and that, if a judge may ever look to consequences, he should do so here, where he may reflect on the wide-spread havoc and desolating ruin which must result from requiring, for the first time, a literal compliance with the statute.

*The very statute now under consideration has been passed on by the supreme court of the United States*, in the case of Dundas v. Hitchcock, 12 Howard, 269, where it is said,—" It is objected, also, that this acknowledgment is not in the very words of the statute. In place of the words, 'as her voluntary act and deed, freely', it substitutes ·the words, 'freely, and of her own accord.' That the words of the acknowledgment have the same meaning, and are in substance the same with those used in the statute, it needs no argument to demonstrate; and that such an acknowledgment is a sufficient compliance with the statute to give validity to the deed of the wife, is not only consonant with reason, but, as the cases cited by the counsel show, supported by very numerous authorities. The act requires a private examination of the wife, to ascertain that she acts freely, and not by compulsion

of her husband; but it prescribes no precise form of words to be used in the certificate, nor requires that it should contain all the synonyms used in the statute to express the meaning of the legislature. In other acts of the same legislature, where a precise form of acknowledgment of certain deeds is prescribed, it is provided 'that any certificate of probate or acknowledgment of any such deed shall be good and effectual, if it contain the substance, whether it be in form or not, of that set forth in the first section of this act.'—Clay's Digest, 153. The legislature have thus shown a laudable anxiety to hinder a construction of their statutes, which would require a stringent adherence to a mere form of words, without regard to their meaning or substance, and make the validity of titles to depend on the verbal accuracy of careless scriveners."

In Owen v. Norris, 5 Blackf. 481, the court held the certificate valid, although it did not agree in form with the words of the statute, but contained the substance or meaning of it.

In Gregory's Heirs v. Ford, 5 B. Mon. 481, the certificate did not state that the deed had been "shown and explained" to Mrs. Gregory on her privy examination, "which (the court say) in strict propriety should have been done"; yet the certificate was held sufficient, because the fact of privy examination, and her declaration that she freely and voluntarily sealed and delivered, &c., raises the implication that the deed was shown and explained to her, because the clerk was presumed to have done his duty in making the examination, and because it was not to be presumed that he would so certify without ascertaining that she understood what she was doing. They further say, "We know of no case in which the deed of a *feme covert*, certified as this is, has been rejected. We are disposed to construe the statute and certificates liberally, with a view of maintaining, rather than destroying, titles derived from *femes covert*"; and, in there sustaining the certificate, the court went much further than is required in this case.

In the case of Nantz v. Bailey, 3 Dana, 112, the whole subject is very fully considered. In that case, it did not fully appear on the face of the certificate that Mrs. Nantz acknowledged the deed apart from her husband, or that she signed

and sealed it, or that the deed was, on privy examination, shown and explained to her,—and these were all required by the law of Kentucky; yet the certificate was sustained, because, upon a reasonable construction of the language employed, these facts appeared to have taken place; and a literal compliance with the statute was held unnecessary.

The case of Shaller v. Brand, 6 Binney, 435, meets every objection urged against this certificate; for the acknowledgment was not so certain or particular as this. It is there said by Tilghman, C. J., that "it cannot be doubted that a woman's voluntary consent excludes all idea of coercion or compulsion."

To the same effect are the following cases : Robin's Lessee v. Bush, 1 H. & McH. 50; Webster's Lessee v. Hall, 2 *ib.* 19; Hoddy's Lessee v. Harryman, 3 *ib.* 581; McIntire's Lessee v. Ward, 5 Binney, 296; 1 Peters' C. C. R. 188; Jackson v. Gilchrist, 15 Johns. 89; Troup v. Haight, 1 Hopk. Ch. 267; Raverty and Wife v. Fridge, 3 McLean, 245; Vance v. Schuyler, 1 Gilman, 160; Kottman and Wife v. Ayer, 1 Strob. Law R. 571; Etheridge v. Ferebee, 9 Ired. Law R. 312; 1 *ib.* 113; 8 B. Mon. 177; 15 Ohio, 423; 10 *ib.* 599, 639, 799.

We propose now to show, very briefly, that the authorities cited by the court do not sustain its opinion; and this will appear on a slight examination of them. The references to 1 Story's Equity, 597, 177; 1 Story's R. 486; 1 Peters, 338; 6 Wend. 9; 1 Dev. Eq. 487; and 18 Mo. 522, only show that equity will not aid a defective execution of powers by *femes covert*, or supply a circumstance for the want of which the legislature has declared the instrument void; and that the privy examination and acknowledgment of a deed by a *feme covert* cannot be proved by parol. These points are not raised in our case, nor are they at all disputed by us. In the case of Jourdan v. Jourdan, 9 S. & R. 173, as in Elliott v. Piersol, 1 Peters, 338, the main point was, that the defective certificate could not be helped by proving that the facts, as they actually occurred, were different from the statement of them contained in the certificate,—the clerk having omitted to state, that the wife, when examined apart from her husband, voluntarily consented; and this we certainly do not dis-

pute.   In Chauvin v. Wagner, 18 Mo. 531, it was said by Gamble, J., that under his construction of the act of 1825, the want of the words " and does not wish to retract", in the certificate of a deed conveying the wife's real estate, was fatal.   Although this point does not occur in our case, it may be observed that the other two judges did not concur in this opinion; and the contrary has been decided, on precisely the same statute, in the case of Hughes v. Lane, 11 Illinois R. 123.   But the tenor of Judge Gamble's opinion, and the dissenting opinion of Judge Scott, strongly support the validity of this certificate.   In the case of Gill & Simpson v. Fauntleroy's Heirs, 8 B. Monroe, several certificates were examined by the court; in one of which it was determined, that the fact of privy examination and voluntary consent must appear on the face of the certificate,—a doctrine not controverted by us; and in another it was held, that a declaration by the wife, " that she did not wish to retract", was tantamount to the statutory declaration, " that she freely acknowledged the deed."   This is a much stronger case than the present; and the reasoning of the court, alone, is sufficient to sustain this certificate.

These are all the authorities referred to by the learned judge who delivered the opinion of the court, in support of the position that the absence of the word *fear* is fatal to the notary's certificate.   We feel confident that the authorities referred to by us were not brought to the knowledge of the court when this cause was argued, and that this point was not examined at any length, nor its importance very seriously noted, by either the counsel or the court.   We beg your Honors, therefore, to consider that the construction of this statute for which we contend was adopted, in the most express and authoritative manner, by the supreme court of the United States, by Justices Washington, McLean and others on their circuits, by the courts of New York, New Jersey, Pennsylvania, Maryland, Virginia, North Carolina, South Carolina, Kentucky, Ohio, and Missouri; and that the most eminent judges, in delivering their judgments on it, have used the strongest language, and with remarkable unanimity. We beg your Honors to consider, also, that it is not here pretended that Mrs. Hazzard, in the execution of this deed,

was imposed on or deceived; that the defendant, before he would purchase the premises, ten years after the deed in question was executed, obtained her consent to the purchase; that he is a purchaser under a judicial sale, and thus entitled to the most favorable consideration of the courts; and that the only objection to the certificate is the omission of a word, which the most respectable courts have pronounced unnecessary. If, under such circumstances, the defendant's title is still held invalid, he cannot but feel that his is an exceptional case, and one of extreme hardship; and that his interests are sacrificed to what one of the judges calls "a severe criticism on language", and to the ingenuities of refined reasoning.

2. As to the next objection, it is enough to say that, on a fair reading of the statute, it cannot be made to appear that it forms any part of the officer's duty, before whom a married woman appears, to make any inquiry or examination as to her age. This construction has never been adopted in this State, either by the courts, the bar, or the officers by whom such certificates are taken.

*Per Curiam* (March 10).—This application for a re-hearing has been very fully considered, and is overruled.